Good morning, Honorable Judges. Good morning. Good morning. I, Veronica Gabriel, mother of Sophia and Sarah Pellen, in this case hearing, performing as pro se, my oral argument today will not be based on the merits of the trial hearing in the lower district court, but strictly based on the merits of my appeal, which I am very likely to prevail, based on the clearly erroneous ruling of the lower district court. For the purpose of brevity, strictly out of respect for this court's time, I will therefore only be addressing the undeniable and undisputable fact of the Article 13 defense of maturity and objection to return, which was clearly found in this case and explicitly stipulated in the district court's findings of facts and conclusions of law and order entered on the record May 14, 2014. Due to the very limited time made available, all my contentions in their entirety have already been addressed extensively and technically in my briefs on record. Therefore, I ask this panel to refer to my briefs on record regarding all my arguments in this case and to make a decision based on my briefs on record with the supplemental support of my oral argument today pertaining to my Article 13 defense argument. We have before this panel a very obvious case of erroneous ruling on behalf of the district court by way of its application of the Hague Convention laws through its implementing statute in this country, DICARA. We have a very clear-cut case in which Sofía was not wrongfully taken, but in fact Sofía remained with her mother due to Sofía's strongly expressed objection to return to Colombia. Instead, Sofía preferred to remain living in this country as the lawful U.S. permanent resident Sofía has been since 2013, as the record clearly shows. It is important to emphasize that Sofía is a 13-year-old teenager and not a child, and the district court found Sofía to be a very intelligent, mature young lady who strongly expressed her objection to return to Colombia, which was in full accordance with the Article 13 exception and prohibition of maturity and objection to return provided under the Hague Convention. The Hague Convention provides the respondent only establish one of the five affirmative defenses provided under the convention. C. 42 U.S.C. 11603 E.2. Courts in the United States are only allowed to determine rights of return or stay under the convention and not the merits of any underlying child custody claims. This is explicitly stipulated in the beginning of the section of DICARA, Statute 42 U.S.C. 11601 B.4. All the district and circuit courts have followed this mandate, though in this case herein, the lower district court did not follow this mandate as was required to do so. But rather, the district court in this case ruled like a family court by imposing court orders of family law and custody issues such as visitation and communications order regarding Sofía. See specifically page 5 and 6 of the district court findings and order. The district court was furthermore erroneous in ordering I modify custody in Colombia. This is clearly erroneous under 42 U.S.C. 11601 B.4, which clearly prohibits the courts from ruling on the merits of any underlying child custody claims. Unfortunately, the district court made the merits of foreign custody the legal issue in its ruling. The standard for review for this Court is the facts de novo, reviewing the district court for clear error, misinterpretation and misapplication of the law by way of its implementing statute, the ICARA. Therefore, I respectfully request this Court to apply and implement the ICARA laws correctly by reversing and vacating the district court's erroneous ruling. The undeniable and undisputable facts are the Article 13 exception of maturing objection to return was clearly found. All parties, especially the opposition and the district court, do not deny or dispute the Article 13 exception was clearly found. But yet, the district court misapplied the law by not applying it to its own findings in the final ruling when it was obligated to do so. The district court explicitly stipulated the following findings in its ruling, which was drafted by opposing counsel. That is, the most important factual issue is whether the court can rely upon Sofia's desires and wishes. Moreover, the court finds, in fact, that it can rely upon Sofia's desires and wishes, that Sofia is a very mature young lady, that Sofia has a very strong intellectual capacity and speaks her opinions well, that there might be some influence by Veronica or Sam over Sofia's opinion, but that is not an overriding or undue influence, that Sofia desires to live with her mother, that Sofia desires to live in the United States or Colombia, that Sofia's motivation and stated intent to live with her mother and live in the United States are totally sincere, that Sofia's strong expressed desire is to live with her mother during the next indefinite period. Therefore, the district court was clearly contradictory in its final ruling because the district court did find its most important factual issue, which was that it can rely upon Sofia's desires and wishes, though the district court did not apply into its final ruling the most important factual legal issue when it was found. Therefore, the district court misapplied the law. Under a true and correct hate case in this country, correctly implementing the law by way of ICARA, such a contradictory, erroneous ruling would never occur, and the return petition would have been clearly denied based on the findings and all the case law. The Respondent's burden of proof requirement was to be made by way of preponderance of the evidence pursuant to 42 U.S.C. 11603E2B, as set forth in the Article 13 exception. In this case, though, the burden of proof requirement was far exceeded, as the interview from Sofia went above and beyond the preponderance of the evidence requirements needed for the Respondent. All the Article 13 case law shows us the minor only having a merely or subtly preferred remaining in this country compared to the strong objection to return that Sofia showed. See Da Silva v. Pitt from the 10th Circuit, in which the Article 13 objection to return case law template and test for other cases. The Da Silva case was also used for the ruling in Vasconcelos v. Batista from the 5th Circuit. See the Vasconcelos case in my brief. Sotomayor, how much more do you want to read? How many more pages you got? Just one page. I'm only going to be addressing Article 13, which is my affirmative defense that I want to finalize. I'm trying to be kind because I know you're appearing under difficult conditions. Yes, Your Honor. And pro se in this particular matter, but I just want to know how far we had to wait for you to read this. Yes, Your Honor. To be honest with you, just a page and a half. Because I did read your brief already. Yes, Your Honor. And I haven't really heard anything different than what you put in your brief. Well, Your Honor, my main argument is Article 13, which is the undeniable and indisputable facts, and I support it with the case law, which is right here. Okay. Well, if you've only got a half a page, I don't want my good colleague, Judge Schroeder, who might pull my robe here if I don't let you continue. Thank you so much, Your Honor. Well, I don't think you'll pull my robe. You'll just kick me. Thank you so much. Go ahead. Thank you, Your Honor. Thank you. I appreciate that. Both in my briefs and record, I support it with many Article 13 case laws supporting my contentions. It is overwhelmingly clear, as all the case law shows us, once the Article 13 exception is found by way of preponderance of the evidence, the minor always stays and the return petition is denied. In this case hearing, the Respondent far exceeded the preponderance of the evidence of both the Silva and Vasconcelos test cases. To no doubt, the district court in this case defied and ignored the case laws and all the other legal authorities applicable to Article 13. The opposition's argument that it is not mandatory for the district court judge to deny the return petition once the Article 13 defense is found, but it is up to the district court discretion, contradicts through Statute 42 U.S.C. 11603 E2B and E2B. As all the case law clearly contradicts this opposition's argument, no case law shows us the minor is being returned when the Article 13 defense is found, especially as explicit as Sofia's strong objection to return. In addition to opposition's claim that the district court thought there might be some influence on behalf of Sam or myself, it is again refuted by the records of the district court on finding, especially stipulated there is no overriding or undue influence on behalf of Sam or Veronica. This, despite the fact that circuit courts have always very clear ruling in even any undue influence exists, it is not to be an excuse for judicial paralysis under the Article 13 exception, which is only to be met by way of preponderance of the evidence, as this is the only article under the Convention strictly about the minor wants to stay or return. The district court was highly erroneous and misinterpreted the law by stipulating that returning Sofia will further the aims of the Convention, as returning Sofia against her preference will be unacceptable. Returning Sofia will be, therefore, inappropriate and does not further the aims of the Convention, given the facts and findings in this case. Sillaguna v. Avila, from my briefs on record, which is essentially identical to this case herein, in which the Court affirmed that sending Sofia, sorry, that sending the minor to the father's custody, in this case Mr. Laguna, back to Colombia, it will be inappropriate and does not further the goals of the Convention. Additionally, as requested in my reply brief, in counter-reply to the opposition's argument, I request this panel to bring closure to this case once and for all, strictly for Sofia's sake and best interest. And this is court not remind back to the district court for further findings, as the opposition argued. Considering there are no further findings, as the district court's findings were final, it must be emphasized there are no further findings required as to why a daughter naturally wants to and prefers to live with her mother pursuant to Article 13 Convention in full accordance with the preponderance of the evidence requirement 42 U.S.C. 11603e to b. For all the foregoing reasons I argue today, in addition to all the foregoing reasons I explained in my briefs on record, the district court order must be reversed and vacated, thereby denying the petition to return Sofia against her will to Colombia. Thank you. We understand that you feel very deeply about this. I just ask one question. Yes, Your Honor. You presented your case very well. Did you have an attorney in the district court? No, Your Honor. I didn't. Thank you. In the district court, I discharged them due to misrepresentation and other things. That was just at the beginning of the case, and then I continue on by myself with obviously my husband Sam's assistance all the way through. Thank you. Thanks to you, Your Honor. Do you have any questions, Cohen? I don't. Hello. Emily McFarling for the appellee, Mr. Merchan. I just want to point out right in the beginning that the appellant did have an attorney in the proceedings in district court. She had an attorney at the evidentiary proceeding that resulted in the final order. She just discharged her attorney in proceedings that happened after the appeal. The standard that we're looking at is whether or not the district court's decision in this case was clearly erroneous or whether the court did not properly apply the law. The appellant wants to find certain factual similarities between her case and cases where the appellate court upheld the district court in refusing to return a child. And the big, huge difference between the cases and the similarities that she's trying to find is that there is a burden on appeal to find that there was some error in the district court's decision. And the cases where the district court found that a child should not be returned based upon mature preference, those are cases where the district court made that finding and they had the discretion to make that finding. In this case, the district court made a finding that there was a mature preference and still chose to order return. That is in the discretion of the district court to do. And that is what happened in this case. And to try and road map certain similarities between cases that were upheld and this case that is being asked to be reversed is quite a different matter. In the beginning of her argument, there was an argument that there was no wrongful removal. The district court found that there was a wrongful removal. The district court found that Columbia was the habitual residence of this minor child. I think the evidence was very clear that the parties had a custody agreement back from 2011. It was a final court order entered in the country of Columbia that this child was sent for a vacation, specifically on vacation, arrived July 5, 2013, with a return ticket back to Florida April 12 to return to Columbia April 15. It was very clear. Mom signed a travel document that detailed that this child was only coming for a visit. In her briefing, she tries to argue that there was some change in habitual residence that occurred after her wrongful retention. But we look at wrongful retention and habitual residence at the time of the retention. That retention occurred sometime between July 5 and August 12, that time period that that child was supposed to be on vacation here. And certainly there was no habitual residence established during a vacation that dad had consented to as a vacation. We have a clear finding of retention and breach of custody rights, which mom hasn't disputed, and that the petitioner was actually exercising those custody rights. Now, the Court has found that there was a wrongful removal. The only mechanisms in order to stop a removal and a granting a petition are to have one of the affirmed offenses. A judge does not have a significant amount of discretion to deny a petition when there is a wrongful removal unless one of a few very specific enumerated defenses are met. And so that's what I'm going to address the most of, because it was found there was a wrongful removal. And we look at the defenses that have been brought up by the appellant. She highlights in her reply brief that there was some kind of subsequent acquiescence and cites a case, Gonzales-Caballero, that has a situation where the left-behind parent sent all of the documents required for the child to remain in the United States as evidence of subsequent acquiescence. In this case, we had a dad who education is very important to him, and he provided only documents that were required to place this child in school and objected to every single other thing that was needed for her to remain in the United States. And we have a clear finding by the trial court that there was not an acquiescence by dad for this child to remain in the United States. He did find that there was an acquiescence for this child to be placed in school during the proceedings, but not to actually remain in the United States. I don't think that the appellant has met that defense, and certainly we have to give strong deference to the finding of the trial court that there wasn't an acquiescence. The second defense is grave risk of harm, and we have a very clear finding from the district court that there was no risk of future harm. There were some findings of some prior issues, and that did not translate into a finding of a risk of future harm. And the court had discretion, took evidence on all of the allegations made by the appellant, and made a finding. We have a defense that was put forth of whether or not the child was well settled. I think the law on that is very clear that that's not a defense that is available to less than a year after the retention. And the final one, and the one that the court, the district court, put the most emphasis on was the mature preference. And the big thing to point out is that, and this is detailed in the Perez-Vera report, the court is not mandated to deny a petition for return if a child has a mature preference. The court has discretion in making that decision. The court may make that decision, but it doesn't have to. And, in fact, in the Blondin case, it says the court must apply a stricter standard when the sole reason for a decision is the mature preference of a child. And that's what the court did in this case. The court, because it saw that there was a preference of an older child, gave Mom the opportunity to attempt to get a custody order by staying the order for six months and allowed her that opportunity, which is more than he had to do. He saw that, under the law, he had to grant the petition for return, but allowed her an opportunity to get a court order that would change that. Counsel, are you aware of any cases that say that Judge Jones should have detailed his reasons for not exercising his discretion by acquiescing to the minor's wishes or desires? I don't believe so. I'm not aware that having to detail why he found there was a mature preference but chose not to order the return. I think just his finding of – he did have some findings that go to that, that the child had some signs of influence by Mom and stepped out, even though he didn't find it undue influence. So there are some findings that go towards that element. Also that Mom had cut off contact between the child and her father, a finding that was specifically put on the record that very well might have played into the decision to not make the mature preference of the child the overriding factor in the decision. Do you have anything else, Counselor? No. Thank you. I think your argument is best summed up by the affirmative defenses are the things that the good judge had to think about. And as to those affirmative defenses, what you're suggesting, which is dictated by our law, that even if we were to disagree about consent or subsequent acquiescence, even if we were to disagree about grave risk of physical or psychological harm, even if we were to disagree about mature preference, we have deference we have to give to the district court's decisions. Isn't that your argument? Yes. Even if we don't agree, we have deference to give to them because we can only overturn them if they're clearly erroneous. Isn't that your argument? Absolutely. And I don't think there was any evidence that would make those findings clearly erroneous. And you're also saying as to the well-settled defense, since it wasn't more than a year, it's not even applicable, right? Yes. So just analyzing the statute and making the statute work and with the affirmative defenses, in general, we're pretty well bound by district court's determinations in these cases unless they're clearly erroneous, correct? Yes. And what you're really saying, I hope, is that in other cases where our court has sustained what the district court has done and even allowed the young person to stay here, it was, in all of those cases as well, a first decision by the district court given their determinations that this court then affirmed. It wasn't this court going outside and reversing what the district court had done, correct? Correct. And in the mature preference defense, we have findings by the judge as to, number one, there's a finding that the child wants to stay with mom for an indefinite period of time. There is no finding that the child does not want to go back to Columbia to dad. So we have some positive findings, but there aren't findings that might go to the extent that maybe one of the district courts in another case. So basically the factual elements of this case are very unique, and the reason why the judge fell on one side of the line versus another, that's his decision as long as it's a sound decision. And in this case, it was, even if we have another case that may have some factual similarities and the judge fell on the other side of the line at the district court level. Thank you very much. Thank you. Appreciate your argument. Thank you very much. Okay. You can come forward. If she didn't tug on your robe, I was going to. Okay. Your Honor, yes, we agree that it's not mandatory for the district court to deny the return petition, but once a case law stipulates that when Article 13 is found, the child doesn't return. This wasn't a wrongful removal. Sophia chose and decides to stay with the mother indefinitely, and that was also part of the findings in the conclusions of law and order. Opposition keep making the foreign custody to be the legal issue when we already stipulate that that is not to be the legal issue under the Hague. And last, this is prohibited by the Hague pursuant to Article 11603B4, and there was no overriding or overdue influence. That was also part of the findings. Thank you. Thank you for your submission, and thank you for being here. Appreciate that very much. Thank you both. Case is submitted for, this is case 1416045, Rocha v. Gabrielle, which is now submitted. And our court is adjourned. All rise. This court for this session stands adjourned. Thank you.
judges: Benitez, Schroeder, Smith